UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

CARLY STEPHENS,

    Plaintiff,

vs.

ADLER SOCIAL, LLC,
a foreign limited liability company,

    Defendant.
_____/

**Jury Trial Demanded**

## COMPLAINT

The Plaintiff, Carly Stephens, by her undersigned attorney, makes the following complaint against the Defendant, Adler Social, LLC:

1. This is an action for sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 and other relevant Acts ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stats. § 760.01 *et seq.*, and for disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and the FCRA.

### Parties

2. The plaintiff, Carly Stephens ("Stephens"), is an adult female who was, at all times relevant to this complaint, a resident of the state of Florida.

3. The defendant, Adler Social, LLC ("Adler Social"), is a limited liability company organized and doing business pursuant to the laws of the state of Nevada. Adler Social is authorized to do business in the state of Florida and has a principal place of business in Pompano Beach, Broward County, Florida.

4. At all times relevant to this complaint, Adler Social had 15 or more employees on each working day in each of 20 or more calendar weeks.

## Jurisdiction and Venue

5. This action arises under federal and Florida law. This court has jurisdiction of the federal claims pursuant to 42 U.S.C. § 2000e–5(f)(3), 42 U.S.C. § 12117(a), and 28 U.S.C. § 1331. This court has supplemental jurisdiction over the FCRA claims pursuant to 28 U.S.C. § 1367(a) because the FCRA claims are so related to the federal claims that they form part of the same case or controversy.

6. The claims asserted in this action arose within this district and the alleged statutory violations occurred in this district. Venue of this action is proper pursuant to 42 U.S.C. § 2000e–5(f)(3), 42 U.S.C. § 12117(a), and 28 U.S.C. § 1391.

## Procedural Requirements

7. Stephens filed a timely Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") alleging sex discrimination, pregnancy discrimination, and disability discrimination by Adler Social. The Charge of Discrimination was cross-filed with the Florida Commission on Human Relations. The Charge of Discrimination alleged facts giving rise to the same claims brought in this action.

8. The EEOC issued and mailed a Notice of Right to Sue letter with regard to Stephens' Charges of Discrimination on or about September 1, 2020. A copy of the Notice is attached as Exhibit A.

9. Stephens commenced this action within 90 days of the EEOC's issuance and mailing of its Notice of Right to Sue.

10. All other conditions precedent to the filing of this action have been performed or waived.

## General Allegations

11. Stephens began employment by Adler Social on or about September 16, 2019.

12. At all times during her employment, Stephens performed her job duties to the satisfaction of Adler Social.

13. Robin Lincoln-Codjoe ("Lincoln-Codjoe") and Stefan Singer ("Singer") are owners, co-CEOs, and managing members of Adler Social.

14. In November 2019, Stephens showed an email to her supervisor that she intended to send to Lincoln-Codjoe and Singer regarding an unpaid monthly bonus that she had been promised. The email stated that Stephens was pregnant.

15. Stephens' supervisor advised her to omit reference to her pregnancy because, according to the supervisor, no employee at Adler Social had ever been pregnant and the owners would not like it.

16. Stephens' supervisor also advised her to remove a Christmas stocking from her desk that said "Baby" because the owners would not like it.

17. Stephens nevertheless include reference to her pregnancy in her email to the managing members, thus placing Adler Social on notice that she was pregnant.

18. During a meeting with an insurance representative in approximately December 2019, Stephens mentioned her pregnancy and asked whether it was covered by Adler Social's short-term disability insurance. The insurance representative told Stephens that he assumed Adler Social had a maternity leave benefit. Lincoln-Codjoe, who was present at the meeting, confirmed that maternity leave was available.

19. Stephens asked to schedule a meeting with Lincoln-Codjoe to facilitate her application for maternity leave. Lincoln-Codjoe promised to schedule a meeting but failed and refused to do so despite Stephens' repeated requests for the promised meeting.

20. Adler Social paid Stephens' accrued monthly bonus in response to her email but stopped paying new monthly bonuses after learning that she was pregnant.

21. Stephens' supervisor adopted a negative attitude toward Stephens after learning that Stephens was pregnant and took steps to make Stephens' work more difficult, including but not limited to the supervisor's failure to notify the managing members of appointments Stephens had scheduled with her obstetrician to make it appear that Stephens was missing work without notice or cause.

22. On or about March 18, 2020, Stephens contacted her obstetrician regarding symptoms of an illness that she was experiencing. Since the symptoms were consistent with COVID-19, her obstetrician scheduled her for a COVID-19 test and ordered her not to work until test results were available.

23. After Stephens advised Adler Social about her obstetrician's orders, Adler Social advised her to take five days off.

24. Stephens' symptoms worsened over the following days.

25. On March 23, 2020, before Stephens' COVID-19 test result was available, Stephens' supervisor contacted her and asked her whether she was returning to work. Stephens advised her supervisor that she was uncertain when she would return because she was "21 weeks pregnant and pretty darn sick" and had not been released for work by her obstetrician.

26. Stephens offered to work from home while she was sick. Stephens' supervisor told Stephens that Stephens' work could not be performed from home and insisted that she return to the office, in defiance of her obstetrician's orders.

27. At the time Stephens' supervisor was insisting that Stephens work from the office, Adler Social was allowing similarly situated non-pregnant employees to work from home to comply with government recommendations about social distancing during a pandemic.

28. On March 27, 2020, Adler Social terminated Stephens' employment.

29. Adler Social replaced Stephens with an employee who was not pregnant.

30. Although Adler Social falsely claimed that Stephens' termination was due to a reduction in force, Adler Social retained similarly situated non-pregnant employees and hired at least one new non-pregnant employee after terminating Stephens.

### First Claim: Sex (Pregnancy) Discrimination (Title VII)

31. Stephens realleges and incorporates the allegations made in paragraphs 1 to 30 of this Complaint.

32. Adler Social intentionally discriminated against Stephens because of her sex when it stopped paying a promised monthly bonus to Stephens because Stephens became pregnant.

33. Adler Social intentionally discriminated against Stephens because of her sex by interfering with Stephens' work performance because she became pregnant.

34. Adler Social intentionally discriminated against Stephens because of her sex by treating Stephens less favorably than similarly situated male and non-pregnant female employees with regard to the terms and conditions of her employment by not allowing her to work from home during a pandemic.

35. Adler Social intentionally discriminated against Stephens because of her sex by terminating Stephens' employment because she became pregnant.

36. Adler Social's discrimination against and disparate treatment of Stephens with regard to her termination, compensation, and the terms, conditions, and privileges of her employment was an unlawful employment practice that violated 42 U.S.C. § 2000e-2(a).

37. Adler Social's sex discrimination against Stephens was outrageous and malicious.

38. As a direct, substantial, and proximate result of Adler Social's sex discrimination, Stephens suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

### Second Claim: Sex (Pregnancy) Discrimination in Violation of the FCRA

39. Stephens realleges and incorporates the allegations made in paragraphs 1 to 30 of this Complaint.

40. Adler Social intentionally discriminated against Stephens because of her sex when it stopped paying a promised monthly bonus to Stephens because Stephens became pregnant.

41. Adler Social intentionally discriminated against Stephens because of her sex by interfering with Stephens' work performance because she became pregnant.

42. Adler Social intentionally discriminated against Stephens because of her sex by treating Stephens less favorably than similarly situated male and non-pregnant female employees with regard to the terms and conditions of her employment by not allowing her to work from home during the pandemic.

43. Adler Social intentionally discriminated against Stephens because of her sex by terminating Stephens' employment because she became pregnant.

44. Adler Social's discrimination against and disparate treatment of Stephens with regard to her termination, compensation, and the terms, conditions, and privileges of her employment was an unlawful employment practice that violated Fla. Stat. § 760.10(1)(a).

45. Adler Social's sex discrimination against Stephens was outrageous and malicious.

46. As a direct, substantial, and proximate result of Adler Social's sex discrimination, Stephens suffered and will continue to suffer lost wages and benefits and has

suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

### Third Claim: Disability Discrimination in Violation of ADA

47. Stephens realleges and incorporates the allegations made in paragraphs 1 to 30 of this Complaint.

48. From on or about March 23, 2020 until the date her employment was terminated, Stephens was a qualified individual with a disability as those terms are used in 42 U.S.C. § 12112(a).

49. From on or about March 23, 2020 until the date her employment was terminated, Stephens' physical condition substantially limited her major life activities, including but not limited to breathing, standing, walking, sleeping, and working.

50. Adler Social was aware of Stephens' disability.

51. At the time her employment was terminated, Adler Social regarded Stephens as having an impairment as that term is used in 42 U.S.C. § 12102(1)(C).

52. Stephens requested a reasonable accommodation of her disability by asking Adler Social to allow her to work from home until her disabling condition permitted her to work from the office.

53. Adler Social failed to engage in an interactive process with Stephens to determine whether a reasonable accommodation could be provided to her.

54. Adler Social failed to offer or provide any accommodation of Stephens' disability whatsoever.

55. With a reasonable accommodation, Stephens could have performed the essential functions of her employment.

56. Adler Social intentionally discriminated against Stephens by terminating Stephens' employment because of her disability or, in the alternative, because it regarded her as being disabled.

57. Adler Social's discrimination against Stephens because of her disability, including its failure to accommodate her disability, was an unlawful employment practice that violated 42 U.S.C. § 12112(a).

58. Adler Social's violation of the ADA was outrageous and malicious.

59. As a direct, substantial, and proximate result of Adler Social's disability discrimination, Stephens suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

### Fourth Claim: Disability Discrimination in Violation of the FCRA

60. Stephens realleges and incorporates the allegations made in paragraphs 1 to 30 of this Complaint.

61. From on or about March 23, 2020 until the date her employment was terminated, Stephens was a qualified individual with a handicap within the meaning of the FCRA.

62. From on or about March 23, 2020 until the date her employment was terminated, Stephens' physical condition substantially limited her major life activities, including but not limited to breathing, standing, walking, sleeping, and working.

63. Adler Social was aware of Stephens' disability/handicap.

64. At the time her employment was terminated, Adler Social regarded Stephens as having a disabling impairment.

65. Stephens requested a reasonable accommodation of her handicap by asking Adler Social to allow her to work from home until her disabling condition permitted her to work from the office.

66. Adler Social failed to engage in an interactive process with Stephens to determine whether a reasonable accommodation could be provided to her.

67. Adler Social failed to offer or provide any accommodation of Stephens' disability whatsoever.

68. With a reasonable accommodation, Stephens could have performed the essential functions of her employment.

69. Adler Social intentionally terminated Stephens' employment because of her handicap or, in the alternative, because it regarded her as having a disabling impairment.

70. Adler Social's discrimination against Stephens because of her disability, including its failure to accommodate her disability, was an unlawful employment practices that violated Fla. Stat. § 760.10(1)(a).

71. Adler Social's violation of the FCRA was outrageous and malicious.

72.     As a direct, substantial, and proximate result of Adler Social's disability discrimination, Stephens suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

### Relief Requested

WHEREFORE, Plaintiff Carly Stephens requests the entry of judgment against Defendant Adler Social, LLC as follows:

a.    For an award of lost wages and benefits from the date of Plaintiff's termination until the date of trial;

b.    For an award of unpaid bonuses that were promised to Plaintiff in an amount to be determined at trial;

c.    For an order reinstating Plaintiff to her position or an equitable award of future lost compensation (front pay);

d.    For an award of compensatory damages in an amount to be determined at trial;

e.    For an award of punitive damages in an amount to be determined at trial;

f.    For an award of actual costs and a reasonable attorney's fee as authorized by and 29 U.S.C. § 2000e-5(k), 29 U.S.C. § 12205, and Fla. Stat. § 760.11(5); and

g.    For such other and further relief as is just and necessary.

**Plaintiff demands a trial by jury.**

Dated: November 3, 2020
Plantation, Florida                              Respectfully submitted,

                                                 */s/ Robert S. Norell*
                                                 Robert S. Norell, Esq. (Fla. Bar No. 996777)
                                                 E-Mail: rob@floridawagelaw.com
                                                 **ROBERT S. NORELL, P.A.**
                                                 300 N.W. 70th Avenue
                                                 Suite 305
                                                 Plantation, FL 33317
                                                 Telephone: (954) 617-6017
                                                 Facsimile: (954) 617-6018
                                                 *Counsel for Plaintiff*